Good morning, may it please the court. My name is Allison Rapond and I'm here today on behalf of the appellant, Mr. Lonnie Acker. We ask that this court reverse the ruling of the trial court in granting summary judgment on all claims against my client for three reasons. First, the court granted summary judgment and invaded the province of the jury by making a determination as to whether Mr. Acker's notice of FMLA leave was or was not reasonable. The FMLA clearly states that the reasonableness and of the notice, the timing of the notice, the form of the notice, etc. My second point is that the trial court also disregarded evidence favorable to Mr. Acker, made numerous credibility determinations and weighed evidence against Mr. Acker in favor of the employer, which is contrary to the summary judgment standard. And finally, the trial court improperly held that Mr. Acker did not engage in protected activity under the FMLA and the Americans with Disabilities Act by finding that when Mr. Acker, in fact, did request both FMLA leave and medical leave as accommodations for his disability. Before I get to my first point, I would be happy to provide a brief recitation of the facts if your honors would appreciate it. I think we've, you know, we've read the brief, looked at portions of the record we're aware of and familiar with, with the general background in terms of the call and procedure, etc., and probably the questions we have will probably sort of indicate it. So, you know, from that standpoint. I'll go ahead and proceed to my first point then. I want to call into notice what the FMLA actually does state regarding the level of notice that is required. Mr. Acker was taking unforeseeable intermittent FMLA leave and GM does, as you stated, your honor, require a certain call and procedure for employees to request that leave. But if we look at the regulations itself, like I said, it does state that the employer's call and procedure should ordinarily be able to be complied with. However, the FMLA does also leave room for exceptions to that rule under the example given in the regulation as unusual circumstances. But I'll also point out that the that are more restrictive than the FMLA allows. Isn't that the previous regulation and not the regulation that applies to these circumstances? Your honor, I think that the interpretation used by this court in the Sains opinion, which yes, does concern the previous regulation, does not, would not change under the new regulation. What about this router case from the Sixth Circuit? Your honor, that case is outside the circuit, so it would not be binding on this. I understand it's not binding, but normally we don't create a circuit split if we can avoid it. So that's why I thought it was an interesting interpretation. Yes, your honor, and I certainly understand that point. I would ask that this court keep with its previous precedent in the form of, like I said, Sains. And then I believe there's also precedent from the Third Circuit, Amelia, that still does recognize that the customary policies and procedures of an employer cannot provide for greater notice than is required under the FMLA. And under the circumstance of this case, Mr. Acker did provide notice. In fact, he testified that he provided notice through both call-in numbers. I know that his phone records may not verify that to be the case, but regardless, he did provide sufficient notice to GM to let GM know that he needed FMLA leave. How did he explain why his phone may not have had possession of all of his phone records that's stated in his deposition? GM certainly could have subpoenaed those from Verizon, his cell phone provider. There also could potentially have been a transfer service. I know that's possible now under GM's current policy. The record's silent as to whether that's the case or not. We would expect to elicit that testimony at trial, but that could be a possibility. It could also be that his medical condition had become more serious as the day progressed. The call-in procedure for the GM attendance line is earlier than the call-in procedure requirement for the Sedgwick line. GM is 30 minutes before shift. The Sedgwick phone number requires by end of shift. He's an electrician, right? That's correct. Did he ever suffer attacks while on the job? Yes, Your Honor, he did. That could be pretty dangerous, couldn't it? Yes, Your Honor, that could be very dangerous. Fortunately, his supervisors, and this is a part of the record as well in Mr. Acker's deposition, recognized when he was having some dizziness on the job and then would have him go to medical and then relieve him for the rest of the day. But that's why Mr. Acker did request the intermittent leave so that he would be able to, when he has these symptoms, refrain from coming into work and putting everyone in a dangerous situation. Isn't he still working for GM? Yes, Your Honor, he is. However, he did suffer some, from his standpoint, serious consequences as a result of GM's actions in this case. He lost seven weeks in total of pay due to a period of unpaid disciplinary layoff. That includes not only his regular work schedule, but also his potential overtime, which he testified in his deposition, the possibility for that was $30,000 to $37,000 of pay. Was the call-in procedure, was this a collective bargaining agreed-upon procedure or something outside of a collective bargaining agreement or sort of none of the above? Your Honor, I honestly don't know the answer to that question. I know that the disciplinary procedure is a part of the DOC 8 that's referenced in the briefing, is a part of a collectively bargained document. I do not believe the call-in procedure is, but I'm not 100% certain as to the answer of that question. I do also want to point out the timing of the discipline assessed against Mr. Acker. Mr. Acker requested leave for the first time on November 12th, then November 13th and 14th as well, requested leave on the 22nd and 23rd, and then December 6th, 7th, and 8th. Mr. Acker was not even notified that GM believed him to have been incorrectly following the call-in procedure until December 9th, after all of these absences had taken place. However, GM elected to punish Mr. Acker three separate times with three different write-ups, leading to the seven weeks of disciplinary layoff time. Mr. Acker testified in his deposition that he attempted to provide as much notice as possible, as promptly as possible, and accordingly, it's our position that he did comply with the FMLA. Sometimes we're talking about, what, 11, 12, 13 minutes apart? 13 minutes he was short? I'm sorry, could you repeat that question? Sometimes we're talking about less than 15 minutes that he was short. In other words, within the 30-minute window, he called at 941 instead of 930 or something like that? Yes, Your Honor. What was his excuse that he didn't know 11 minutes earlier or 12 minutes earlier? Well, his condition, the record is silent on that, but his condition does come on very suddenly. The reason he called at 941 as opposed to 930, whatever the times were, was that he wasn't sick at 930, but by 941 he was? Yes, Your Honor. I do believe in his deposition, from my recollection, on at least one of the dates in question, he did attribute that to his condition. His condition came on very suddenly. It was after the end of the call-in procedure, and thus he did have to call in late. Unfortunately, with the system that GM and Sedgwick, the third-party administrator, have set up, there's no way to speak to a live person to explain the reason for the delay, and so GM had already made its decision to punish Mr. Acker prior to him having the opportunity to explain why he may have called in late. Because he's on the third shift, which runs from 10 p.m. to 6.30 a.m., usually later than that due to overtime hours, he never gets the chance to speak to a live person. Instead, he's going to be pushing numbers into an automated system. He can leave a voicemail, but there's no way to know whether that voicemail is received. May I ask what causes this unregulable heart problem? I don't have more detail than that. I know that, oh, his condition is acute iron deficiency anemia. Oh, anemia. Yes, it's anemia. So it causes blackouts, grayouts, dizziness. Do you know what causes it? I believe the physician said that it was complications due to a prior gastric bypass procedure is what it's attributed to. But beyond that, I don't have any more information as to the cause. Well, let me read to you 29 CFR 825.303C, complying with employer policy when the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and requirements absent unusual circumstances. Yes, Your Honor, and I do understand that. I do want to go farther along in the regulation, though, and read further. I know you said absent unusual circumstances. An example that's given, and the FMLA is relatively silent on what is and is not an unusual circumstance. An example is given, but it provides a lot of room for what that actual phrase means. It says, for example, an employer may require employees to call a designated number or a specific individual. I do emphasize that that's singular, a specific number, a specific individual, which implies a very simple call-in procedure. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized, and he or she has access to and is able to use a phone. Well, he's not receiving emergency medical treatment, right? He's just suffering through it until it passes. That's correct, Your Honor, but that's just one example of what could constitute unusual circumstances. Unusual circumstances could also be a sudden onset of a symptom. Perhaps he's so disoriented he can't pick up a phone right away. I don't know more detail on that, and the record is silent on that, but Mr. Acker does state that at least on one occasion, his condition did require him to call in later than scheduled. What's the evidence as to why it's material, the GM, if it's 30 minutes of notice versus 15? Your Honor, I think that the FMLA, and granted, I'm citing to a different section. This is going to be Section 302, which applies to foreseeable leave, but I think it is instructive here. It states that as soon as practicable, which is the standard that's required for notice of leave, means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case. When an employee becomes aware of a need for FMLA leave less than 30 days in advance, it should be practicable for the employee to provide notice of the need for leave either the same day or the next business day. She's talking about GM's perspective on why they need 30 minutes rather than 15. They have to staff their shift, don't they? They do, yes, Your Honor, but 30 minutes notice, I don't know if that would be time to get a replacement in at the beginning of the shift. What's the evidence, if any? There is no evidence on the reason for the 30-minute call-in procedure. I had something. I'll keep it. Let me ask you this. Yes, Your Honor. You just decided on summary judgment. Yes, Your Honor. Putting aside for the moment your legal argument about FMLA, what is the genuine material issue of fact that you assert such that summary judgment was the inappropriate vehicle for deciding this case? I know that there are some disputes about this and historical and so on and so forth, but what's the core genuine issue of material fact that's undisputed that would warrant reversing the summary judgment because there's a fact for a jury as opposed to if it's teed up totally as a legal issue and whether or not there's compliance with FMLA? So, you follow me? Yes, Your Honor. I understand your question. My response would be that this issue deals with reasonableness as a whole, whether the level of notice provided by Mr. Acker was reasonable, whether it was reasonable for him not to allegedly comply with the procedure, and I'll read to you from, and granted, I will acknowledge this case is prior to the change in the regulations, but I think it does still apply today. I mean, this is from Hobson versus Quitman County Hospital and Nursing Home. Although it can be difficult to distinguish between questions of law and questions of fact, in a case where the court is asked to apply the standards of a relatively recent statute to undisputed facts, it is our opinion that the adequacy of Hobson's notice is a fact issue. And besides the previous case, it's the Manuel case. We discussed the content of notice required under the FMLA when leave is unforeseeable. In that case, we observed that what is practical, both in terms of timing of the notice and its content, will depend on the facts and circumstances of each individual case. Don't you think he had an opportunity to present those unusual circumstances each time before he was disciplined? Your Honor, he attempted to do that in at least one of the disciplinary meetings, and there is testimony in the record to that effect. He explained why he called in late, and it didn't matter. And also, doesn't the record reflect that ever since this period of miscommunication or lack of communication occurred, he had continued to take intermittent FMLA leave a bunch of times and complied with the regs every single time? Your Honor, I do understand your point with that. However, I would respectfully disagree, particularly since later attempts to call in, I think, are not relevant to the time period in question. These are the first times Mr. Acker was requesting leave. So I think the time period where he should have the most levity and the most opportunity to explain himself. So this anemia onset some short period before these events occurred? I'm sorry. Suffering from the anemia shortly before these events occurred? Your Honor, the record actually reflects that he'd experienced some of these symptoms since he moved down to Arlington from Indiana, the plant he was at before. He didn't have a diagnosis until shortly before the time period at issue. So you would, in follow-up to the question I asked, your argument is that the reasonableness or not of compliance as opposed to being a question sort of within the purview of GM, and that's why I asked you the CBA question. In each instance, that would be a jury question? I guess that's the part I'm trying to flesh out. I get your argument, but I'm trying to figure out, you know, you got a position that says it's unreasonably dotted out. An employer says, no, let's look at the plan versus if you're arguing that, that dynamic should ultimately be out there for jury to say, well, under these circumstances, 15 minutes was okay, 30 minutes was not. Your Honor, I understand your question. I see I'm almost out of time. May I answer your question and briefly conclude? The light doesn't save you from my question. Okay. Your Honor, my answer would be that the FMLA clearly states that a collective bargaining agreement or subsequent regulation cannot serve to minimize the rights afforded to an individual under the FMLA. So my answer would be, yes, it is a question for a jury. And so accordingly, I respectfully ask that you reverse the decision of the trial court. All right. Mr. Brown. May it please the Court. I'm John Brown on behalf of General Motors. Mr. Acker alleges that GM violated the FMLA as well as federal and state disability laws because he was given seven weeks of unpaid leave in the form of discipline. But Mr. Acker's path to disciplinary leave began long before he ever requested FMLA leave. And GM merely followed the long-established attendance rules negotiated with the union. Mr. Acker hasn't identified another employee. He was treated more favorably under the attendance rules. And the record makes clear that the district court correctly granted summary judgment for GM. I'll begin with the FMLA interference claim. To establish a prima facie case of FMLA interference, one of the elements a plaintiff must prove is that he gave proper notice of his intention to take FMLA leave. And the regulations specifically address the notice issue in the context of unforeseeable leave. Those regulations allow for an employer to require an employee to comply with the usual and customary notice requirements. But the regulations also provide for exceptions. As Your Honor noted, the regulation says when the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. And where employees have been disciplined for violating an employer's usual and customary notice procedure, courts have held there's no violation of the FMLA. And that's true even if the absence would have been protected under the FMLA. I think the Sixth Circuit's opinion in Shrouder v. Dana-Blyde-Axel is helpful. It is very close with respect to the facts there. The plaintiff worked in a unionized manufacturing plant with different shifts, and the employer, like GM, had a no-fault attendance policy, which required the employee to call in for absences. The plaintiff had a long history of absences, although he admitted he understood the call-in procedure. Let me stop you there and ask you, you sort of label it as a no-fault policy, which is an interesting way to put it. I mean, as here, it's 15 minutes, it's 10 minutes, it's late. And I understand late is late. But in some ways here, there seems to be no dispute about the medical condition or it's feigned, the guy's hung over. None of that seems to permeate. I mean, there's suspicion. So it's like 15 minutes here to here, almost to me like a gotcha kind of deal. So you struck a nerve with me when you said, OK, his path to disciplinary action sort of preceded. So I might read that, because all this other stuff leading up to why I say he got less margin of error, shall I put it that way, that feeds into that. I mean, I'm not trying to steer you off from your argument, but I'm just trying to understand. You know, it's kind of a zone, OK? It's 9 o'clock, but if you're here by 9, 10, 9, 15, you're kind of OK. Doesn't mean you're not late, but we don't zap you. So here we get not called two hours late or four hours late or six, didn't call. There are all these little pieces. And I'm not saying that that in and of itself, if it's not on time, isn't on time. But when you label it sort of as a no fault, then I am curious, is that in the documents as such? I mean, just help me understand that a little bit. Your Honor, this call-in procedure, which was the result of collective bargaining, is in writing. And it's publicized to the employees. Mr. Acker said he understood the policy. And that required that if he was going to be absent for any reason, that he needed to before the beginning of his shift. And if it was going to be leave for FMLA, he needed to call the benefits line before the end of his shift. This document is commonly known at the plant as Doc 8. And the document itself at the beginning explains that there is a need. The union and the company both realize there is a need to have attendance, that it's going to be a no fault process. And it explains, because the history here is interesting, under that policy, employees granted five VR days. Those, they're called VR day, vacation restricted. And they can be used for anything. The plaintiff testified in his deposition that those are free pass days. And every year, an employee gets five of those.  Well, he used all of those. And then came step one. He violated the Doc 8 by failing to call in. He was given a written warning, just as laid out in Doc 8. This was before he ever requested FMLA leave. So he was given a written warning. Then he did it again. He violated the policy. So the company went to step two, issued him a second written warning. And so he clearly understood the policy. It was negotiated at arm's length between two sophisticated parties. And I don't think the reasonableness of the policy is the test. Under the regulations, it says that it's the usual and customary notice and procedure requirements. But if reasonableness was the test, I think clearly it was reasonable, because just like the regulations allow for exceptions, Doc 8 also allows for exceptions. Mr. Acker was free to present any information he had as to why he was unable to comply with the procedure. He presented nothing. He didn't take advantage of the opportunity under Doc 8 or under the FMLA regulations. What do you mean by that? At what point? During the discipline hearing? In court? What are you saying? So the only date on which Mr. Acker arguably attempted to say that there were unusual circumstances that should excuse his failure to comply with the procedure was November 14, 2014. But that date can't support an interference claim, because he was granted FMLA leave for that day. I would also point out that he didn't even raise the issue about maybe he couldn't call in, and he didn't provide any details. He said he talked to an HR lady, he couldn't identify her, and he didn't provide any detail. But that didn't come up until he had already been disciplined for failing to comply, and he had been put on disciplinary leave. So it happened after the fact. Well, I thought they went back and revised one of the disciplines. That's correct. This was early on, and he was put on a two-week disciplinary leave. The third-party company that manages FMLA leave said, you know what? He's entitled to FMLA leave. We made a mistake. And so GM said, okay, he's entitled to FMLA leave. And they realized that he had failed to comply with the procedure for calling in his absence for November 14. And so they credited him with one week having been gone. So there was a situation where, on that day, he failed to call in timely or failed to call in at all? It was untimely. And did he also fail to call the second call for FMLA leave? No, not for those dates. And that's why he was granted FMLA leave. Again, that was the only day that he tried to arguably say he had an excuse. So what was his excuse? His testimony was that he just generally had symptoms. He said, you know, because of my condition, I sometimes have these symptoms. That was it. He didn't provide an explanation of I was passed out or I couldn't pick up the phone, I couldn't have anybody call, nothing like that. He got one-week disciplinary action for being how many minutes late? Probably within an hour. But it was late. And his phone records, which he says are the universe of all the documents he has about his calls, clearly show that. If we were to hold there's a fact issue here, would that raise a fact issue sufficient for grievance about any discipline imposed for failure to comply with these DOC 8 type regulations? Well, there's no record of any grievance. And DOC 8 provides that a grievance can be filed after termination, which is the last disciplinary step under DOC 8. And so I'm not sure that the grievance would come into play. But with respect to the... But he had an opportunity to explain after the fact why he was late and he did not do that as a record? Correct. He's never come forward with evidence on the three days for which he was denied FMLA leave. That's November 22nd, December 6th, and December 8th. He's never presented any evidence to try to explain that there were unusual circumstances for any of those days. And so you're saying that on 11-14-14, he was granted FMLA leave? He was. But then why did it matter if he called in late on that day? Well, it's two systems because there's the absence line, which applies to any absence. And the FMLA component is only required if he's going to be absent and it's going to be related to FMLA leave. Well, I understand if he got FMLA leave for that day, why did that count against him? It did not. He was issued one week of discipline for having violated the attendance policy for failing to call in 30 minutes before the beginning of his shift. So he didn't get FMLA leave for that day? I don't understand. Either he was excused for that day or he wasn't. The DOC-8 makes very clear that if you are on FMLA leave, then that is not an occurrence under DOC-8. It's what? It's not an occurrence. It's not a violation. But it also says the failure to call in timely can be a violation even if. So even if he was going to have some need to have FMLA that would be protected, if he fails to call in his absence, that can justify the discipline. And that's what the regulation says. It does. And that's what Schroeder says. And he had an opportunity after that to come in and explain why his call was late. Sure. There's no limitation on when he could explain. He could have been that day, the next day. There are no restrictions on how he would do that. It's very wide open. But there was an adjudication here. He said, I had an excuse. Somebody heard the complaint and said, we don't accept it. There's two pieces. It's the FMLA piece. He was granted FMLA. After he was already on discipline, the third party, Sedgwick, said, you know what? We made a mistake. He should be entitled to FMLA leave. And GM, looking back, said, well, you know what? He didn't call in. And so they disciplined him for failing to call in the absence line. But I'm asking, as part of that discipline, does he have a chance to refute it? And what did that happen here? In other words, he has this chance to say, I had a good reason for not calling or calling late. And did he do that? And was there some sort of determination? He did not. I mean, it didn't come up until afterwards. And he never tried to explain why he didn't call into the absence line. He never presented any evidence on that. He never tried to refute that. So to this date, there's no evidence at all why he was late on February, I mean, November 14th. There's no evidence as to why he couldn't call in at least 30 minutes before that shift. And with respect to the Fifth Circuit's prior opinion in Sainz v. Harlingen Medical Center, which applied the pre-2009 regulations, I would point out that in footnote 9, the court addressed the new regulations. The court went so far as to say that if the new current regulations had applied in that situation to Harlingen Medical Center, that it very well might have been entitled to some re-judgment. With respect to the FMLA retaliation claim, Mr. Acker relies on the same set of facts. But a retaliation claim can't be based on the proper denial of FMLA leave. To establish a prima facie case for retaliation, plaintiff must prove, one, he was protected under the FMLA, two, he suffered an adverse action, and three, he was treated less favorably than an employee who didn't request leave, or the adverse action was taken because of requested leave. Mr. Acker can't establish a prima facie case because he can't meet the first element. He can't show that he was protected by the act when he took disciplinary leave. In Harrelson v. Lufkin Industries, a case where an employee was fired for excessive absences, this court recently noted that, quote, the FMLA bars an employer only from retaliating against an employee for engaging in conduct protected by the act, and failing to comply with an absence procedure is not protected. The court held that summary judgment was proper because the plaintiff hadn't established a prima facie case, because he hadn't established that first element. Mr. Acker also can't establish the last element of a prima facie case for retaliation. As stated before, he can't identify any employee who was treated more favorably. He can't establish a causal link between the disciplinary leave and the FMLA leave. Timing alone doesn't prove a causal link. Here, there's nothing unusual about the timing. And this court, when it's dealt with temporal proximity, has said, well, the adverse action must very closely follow the protected activity.  He's saying that GM was a bit slow in issuing the discipline. Again, there's nothing unusual about the timing here. And this court has held that with respect to temporal proximity, it doesn't always establish a prima facie case. And I think that's true when you look at the record as a whole. Again, Mr. Acker had been disciplined twice under Dockade before he ever requested FMLA leave. So he knew that GM was going to consistently enforce that document that it had negotiated with the union. As mentioned earlier, Mr. Acker continued his employment with GM. He's still employed to this day. And he has requested FMLA leave numerous times since then. So by being placed on discipline, he wasn't dissuaded from seeking leave in the future. If anything, the discipline had the intended effect of correcting his behavior to follow Dockade and timely and properly report his absences and request leave. I neglected to have a copy of the Milia case in my file here from the Second Circuit. Does that apply the new regulation or the preceding one? Your Honor, I believe the case that plaintiff's counsel had with respect to the in line with Sainz applies the old regulation. That's my understanding. I'm not aware of any case where the new regulations have applied and the court has said we're going to get into a debate about reasonableness. Now, even if Mr. Acker could establish a prima facie case of retaliation under the FMLA, summary judgment would still be appropriate because he can't offer any evidence of pretext. The record, again, shows that GM simply followed this well-established policy. He admits that GM acted professionally at all times with him, never said an unkind word to him, never tried to persuade him or condemn him. Not to seek FMLA leave. And there's no evidence that he would have been treated differently under DOCAID and the steps for discipline if he had not requested FMLA leave. With respect to Mr. Acker's disability claims, both his discrimination claim and the retaliation claim, those, again, are wrapped up in the same set of facts. There are no new facts with respect to those claims. And I want to just touch on the discrimination claim because it's morphed a bit and Mr. Acker has argued that he made a request for a reasonable accommodation, that he did that when he sought FMLA leave. And the trial court rejected that. And that's in line with numerous decisions within courts within the Fifth Circuit. The Northern District of Texas, the Southern District of Texas, the Western District of that when someone requests FMLA leave, they're not requesting reasonable accommodation. There are also other courts outside the Fifth Circuit holding similarly. Mr. Acker, on the other hand, has not offered any authority to support his argument that a request for FMLA leave is a request for a reasonable accommodation. With respect to the discrimination claim and the retaliation claim, they both fail also because he can't overcome the evidence that GM has offered, that it followed a legitimate, non-retaliatory, non-discriminatory process of issuing him discipline. It was just following Doc 8. He has no evidence of pretext. There's no evidence that GM's explanation is false and that he would not have been if he had not requested FMLA leave or had not been suffering from his anemia. So for all of these reasons, we request that the court affirm the summary judgment. With his status now, I mean, he's still employed. I mean, status now, he's still employed. And I understand, you know, there were some other changes made and so on and so forth. But regardless to what we do in the case itself, I mean, he's just still in the same posture, subject to the same conditions, et cetera, in terms of absence, call-in, et cetera, et cetera. Is that sort of accurate? That's correct. It hasn't changed. Everybody at the plant is subject to that same procedure. Thank you, sir. Rebuttal, Ms. Rippon. There's just a few points, and I want to go to your question first, Judge Jones. AMELIA actually appears to be, there's not a date with the regulation, but I'll read to you the language the court uses. It's the FMLA generally requires employees to comply with the employer's usual and customary notice and procedural requirements for requesting leave, citing 29 CFR 825.303C, which would track the language of the regulation. The court does go on to state that, however, this requirement is relaxed in unusual circumstances or where the company policy conflicts with the law. And the concern that I believe it expressed in my briefing and that I want to bring to you is that allowing employer policies to trump the requirements of the FMLA puts employees in exactly what you said. It's a gotcha game. Its employees give as much notice as possible. Sometimes that notice is not going to comply with the policy. And as Mr. Brown stated, that employee can be qualified for FMLA leave, but can still be punished because he doesn't call in on time. Why did the Labor Department or whoever it was change the regulation? I don't know the reason behind that. I have not seen the legislative history. They had to have changed. The only reason that makes sense is that they were trying to eliminate having to go to jury trials so often. Perhaps that's the case, but I think that does not change the fact that the standard under the FMLA is as soon as practicable standard. Right, but unless we're getting into Chevron deference and all that kind of stuff, unusual circumstances is a term that can be interpreted by the department making the regulation. And so they said that ordinarily you have to comply with the regulations. Yes, but the regulations are also silent on what exactly unusual circumstances are. It gives one instance of emergency care. What's your evidence of a genuine issue of material fact day by day? That where there's evidence, he says, I couldn't comply because.  What's the evidence? Your Honor, as stated on November 14th, I disagree with Mr. Brown's assessment of the facts. Mr. Acker did testify that he explained he was experiencing his symptoms that day. How long is this commute to work? I would say approximately 30 minutes to an hour. So he was on the way to work when he started experiencing symptoms? I don't know the answer to that, to be honest with you. I believe that he was. What Mr. Acker said is he, not Mr. Acker, Mr. Brown, that he didn't provide any contemporaneous explanation to the employer. So what I think you're saying are explanations that he attested to in his deposition for the first time. Is that fair to say? No, Your Honor, I disagree with that. That's not fair to say. Mr. Acker testified in his deposition that he provided an explanation on the date related particularly to the November 12th through 14th date range. But he got FMLA leave, so that's not even in your case. You said November 14th is the one circumstance when he was given FMLA leave. No, Your Honor. It's November 22nd, December 6th, and December 8th are the dates when he has no excuse. Your Honor, once again, I disagree with your assessment because he was punished for the November 14th date. He was initially assessed the two-week suspension. He got FMLA leave. He got one week because he didn't call in, which could have applied to anybody, FMLA or not. Yes, Your Honor, and I believe that policy, like I said, it undermines the... What was his contemporaneous explanation for why he was late calling in on November 14th? From my recollection from his deposition, he stated that he had been experiencing some of the symptoms, and so I believe that he stated he was going to turn... He turned around and was on his way, but I don't remember that. I don't want to tell you inaccurate information. I do know that he stated to the individuals assessing the discipline that he was experiencing symptoms that day, which was the reason for the delayed call in. All right. Thank you, Ms. Rufon. Thank you for your opening and rebuttal, Mr. Brown. Thank you. Case will be submitted. We'll decide. All right. Call up third case, BP versus...